Your Honours, in this case, both the immigration judge and the board found that Petitioner was ineligible for asylum and withholding of removal on the grounds that she was a member of and supported a non-designated terrorist organization, namely the Eritrean Liberation Front. As a result of this finding, she was basically found ineligible for asylum and withholding removal, and the only relief available to her after that was the very limited form of relief known as deferral of removal under the Torture Convention. But both the board and the IJ found that she was not eligible for that relief either because she didn't demonstrate her... Yes, she did because she challenged the finding of the judge that the ELF was a terrorist organization. She may not have made those... Right now, she's made a lot of arguments, and at least by my reading of it, many of the arguments are new. She raised the terrorism issue in a general sense, I understand, but my concern is it appears that she's made a number of the arguments that you're undoubtedly bringing to us today. She did not bring those to the BIA, and if it's not exhausted, we don't have jurisdiction on those points, do we? Well, the Ninth Circuit has held many times that a petitioner before the board doesn't have to make the most articulate arguments in a case before the BIA... But the petitioner has to exhaust his or her administrative remedies. She does, and she did question the designation of the ELF as a terrorist organization in her BIA brief, and I think that... If hypothetically we felt there were no exhaustion, what should we do? Remand it to the BIA so they can consider her arguments in the first instance? I would think that would be fair and in the interest of justice, and it should be at least remanded also for the question of deferral of removal, because I believe that she does certainly qualify for deferral of removal under the facts of the case. And also, it should be remanded to the board because the way the case is proceeded, she's basically being denied her opportunity to be considered for a waiver. And the Congress specifically created waivers for... Because they realized the injustice of this kind of situation where somebody was a member of an organization... I can understand it, though. The waiver under Section 1182 D3BI is invested solely with the Secretary of Homeland Security in consultation with the Attorney General and the Secretary of State. And it says in such... Secretary's sole unreviewable discretion. Under those circumstances, do we have any basis for reviewing that aspect of this case? Well, I think, again, because the board... Neither the board nor the IJ made a finding of whether she'd be eligible for asylum but for the terrorism bars, I think there is grounds for removal... Remand on that basis. Okay. And I understand your point on the first issue we talked about. But I'm talking about under the section that I just cited, which I won't bother with reciting again. It seems to me we're just out of luck there. We don't have any jurisdiction if it's unreviewable. The statute's very clear. It's unreviewable. And I'm not asking you guys to... This Court to make a finding regarding the waiver. I'm not asking the Court to say that she should be granted a waiver. I'm just saying that there should be an opportunity for her to be considered by the Secretary of State in his... But you're saying we have jurisdiction to send it back so that the Secretary can do her job. Well, in... Well, I am saying that there is... The proper procedure was not followed here. That she should have been... Despite the terrorism bars, the Board and the immigration judge should have made a finding regarding her... If we do send it back, who do we send it? If it's unreviewable, would the IJ have jurisdiction? Would the BIA have jurisdiction? They would not. But the current DHS policy is that for cases before the immigration judge, they would be put on hold for the Secretary of State and the appropriate authorities to consider a waiver. Counsel, Judge Gould, if I could ask you a question. Did your client ask the Board to do that earlier? Did your client ask the BIA, Wait a minute. Don't rule on this. Submit this to the Secretary for a waiver determination. Well, the particular waiver provision for her type of case was not established into law until 2008. And at that time, her case had already been up in front of this court. It had already been appealed to this court. Okay, thanks. Excuse me, I want to be sure I understood you correctly. Are you saying in answer to Judge Gould's question that before the BIA considered this, that this was in fact considered by the Secretary? No, I'm saying there wasn't a waiver available for her in this case. You're saying the waiver provision... Huh? As I understand, you're saying when she argued to the BIA, this waiver provision did not exist. Yes, exactly. And it was subsequently enacted. So you'd like us to remand so the BIA can address it? When was it enacted? It was enacted at the end of December 2007. So this case was on appeal since 2006 here. Your Honors, if I may also address the issue of the sufficiency of the evidence. The evidence, basically the government's position would be that an immigration judge can just rely on any evidence pulled off from the Internet in order to hold that an organization meets the definition of a Tier 3 terrorist organization without any guarantors of reliability or trustworthiness of that evidence. There's no question that this organization was a terrorist organization, is there? Wasn't it specifically named? It hasn't been designated by... No, it's a Tier 3 terrorist organization, which means it's now undesignated. Okay, but counsel, if I could ask you this. I understand, like, one person's terrorist is another person's freedom fighter, so I'm not being judgmental on this. But I thought that the petitioner herself testified that the ELF, in struggling to let Eritrea break away from Ethiopia, engaged in various kinds of violent acts, including blowing up an airplane, hijacking an airplane, assassinations and other violent conduct. So if that was from her testimony, which is how I read the IJ's opinion, then it's not really a case of saying the IJ can drag anything off the Internet. I thought the IJ relied in large part on how she described the organization herself. No, in fact, the IJ relied solely, and the same as the Board, relied on Exhibit 11, which are those incident profiles from the Internet. And, in fact... Was the IJ, to disregard her testimony that the ELF objective was the forcible overthrow of the government of Ethiopia, a fact that Judge Gould outlined? Well, solely stating that the ELF was engaged in armed struggle against the Ethiopian government does not necessarily mean it engaged in terrorist activities. If you look at the statutory definition of what constitutes a terrorist activity, they're very discreet acts, hijacking, kidnapping and violent attacks. But she specifically said she knew or thought that the organization had hijacked an airplane. Did she not? She did not say that. She said she heard about it, but she did not know anything about it. It's hard to understand what she's trying to say. It's very ambiguous. This is the material assistance issue as well. I mean, it's a very broad net. One can agree or not agree with what Congress decided to do, but it's a very, very broad net. And the fact that she, as Judge Marbley indicated, the fact that she, if you will confess, she volunteered the fact that she was aware of this hijacking and other actions, trying to violently overthrow the government, doesn't that leave her in an untenable position? Well, like I said, her testimony was very big. And it's almost like if she's saying, I heard about it. Well, it's not vague on those points, though. My question is, isn't that testimony a sufficient basis from which the IJ can make the decision that ELF was a terrorist organization? Because she's almost saying, I heard about it, but it's not true. It's nothing that I know of. It's almost like she's saying it's not true. Well, it's one possible interpretation of what she said. Well, she says nothing that I know of. And when did she know about it? She didn't know about it at the time she joined, or did she know about it several years later? But that might be arguable, counsel, about the hijacking of the plane. But I thought she also testified about other types of violent activities that she definitely knew about. Is that wrong? In fact, that would be wrong. In fact, the DHS attorney asked her specifically about the other incidents in the MIPT profiles, and she said she knew nothing about them. Well, I know she didn't know about all the things in those documents that were in the exhibit, but I thought she described the organization in terms that indicated knowledge it had used violent techniques. And I'll go back and reread all her testimony. You were right, Judge Gould. I mean, she said that, did your group use violence? Yes, they did. They were fighting for independence of Eritrea. Did they use weapons? Yes. They had a gun and so on and so forth. So if you look at the record, 146, 194, 195, 229, 233, and 239. My point is that could the judge rely on this testimony? You're going to the merits of whether it's true, whether she meant it, whether it was vague. Could he rely on this testimony in making a decision that the ELF is a terrorist organization? I don't believe he can, and the reason is violence itself does not qualify as a terrorist activity. Well, but a terrorist activity under 1182A3B III-5 says that the use of any explosive or firearm with the intent to endanger directly or indirectly the safety of one or more individuals or to cause substantial damage to property. That is under the definition of terrorist activity. So if you take her testimony in the context of that definition, why can't the IJ rely on that testimony to find that there was terrorist activity? Where is the demonstration of intent in that statement, that there was an intent to endanger property or people? Well, she doesn't have to have intent. She has to materially support it, does she not? Well, we're talking about whether ELF qualifies as a terrorist organization, and for that you need to present specific incidents of specific attacks that meet that definition of a terrorist organization, of a terrorist activity. And I also point out that even this court in Cannes noted that if a country has been a signatory to Geneva Conventions, then that would be incorporated into their domestic law, the International Law of Armed Conflict. And so it's simply a statement that violence against a government would not necessarily be unlawful under that country. I'm sorry, go ahead. No, please, go ahead. What I was going to say was at the time she's describing ELF, it was not a government. It was, as I understand it, an organization trying to extract Eritrea from within the government of Ethiopia. I don't see how your Geneva Convention argument follows it. To me it has no traction to say, well, a government can, like during World War II, England and France and the U.S. could use violence and that wouldn't be terrorist, but a group trying to break away a segment of a country to be a separate country doesn't come within the definition. I'm having the same trouble I think Judge Marpley was addressing. The question for us isn't, do we think, would we find on the evidence that ELF qualifies? The question is, is there substantial evidence in the record from which the administrative agency could make that decision? And I think that test by Supreme Court doctrine requires us to ask, does the record compel the opposite conclusion? So to say there wasn't substantial evidence that they qualify would be to say the record compels the conclusion that they don't qualify. Do I have the test right? Well, if that evidence is admissible, yes, then that would be the MIPT evidence. If that evidence is admissible, if it doesn't violate fundamental fairness, then I would agree that that would be the test. And in regards to the Geneva Conventions issue, the Geneva Conventions includes all parties to armed conflict, not just governments. So basically Ethiopia, and it was a signatory to Geneva Conventions starting in 1977, that way by being a signatory it incorporated the law of international armed conflict into its domestic law. Therefore, lawful attacks against military targets by a group like ELF would not be considered unlawful under its own law, and therefore would not meet the definition of a terrorist activity. Mr. Matthew, we're taking a little over time. We'll give you a little bit to respond afterwards. Why don't we hear from the government and then we'll come back to you for a brief response. Mr. Stone. Good afternoon. May it please the Court, my name is Paul Stone. I represent the Respondent Attorney General of the United States. This petition for review involves a woman who described herself as an urban warrior for the ELF, a group dedicated to the violent overthrow of the Ethiopian government. She admitted they hijacked aircraft and she passed on information that would help them target the government. Did she actually admit to participating in the hijacking or did she simply say she had heard about the hijacking? She just said she heard about it, Your Honor. We're not accusing her of having been involved in the hijacking, but she did. Where does the evidence come from that says she helped ELF target officials or people in the Ethiopian government or military? Was that her own testimony or someone else's? That comes both from her testimony and from the letter she introduced from the ELF. Where's that in the record? Yes, the letter from the ELF is at page 470 in the record, and the testimony from her can be found at page 232 where she testified that she carried information. She didn't know the exact contents of the information, but she understood that it would be used to attack or target the government of Ethiopia. And the letter from the ELF corroborated that, explaining that she collected information on the enemy. Now, what's important about that point is that renders her inadmissible under little paragraph 3. That's 1182A3BVIIII. Sorry for the alphabet soup. What's the government's position regarding the failure to exhaust the argument that she can't be removed on terrorism grounds? Do you agree that she didn't exhaust or do you think she did? Well, on the particular grounds she raised below, she did. So you think we have jurisdiction and we have no issue of exhaustion? Well, there are various other issues. There's various areas that she didn't exhaust. What did she not exhaust? Well, for example, she didn't raise a coherent objection to the immigration judge to the introduction of the MIPT reports. She essentially put in a placeholder objection saying, I object, which more or less is saying, I object. This is devastating to my case. That's it? I'll think of the reason later. That's it? That's all she put towards that. Counsel, on that issue, let me ask this. Generally, at least some agencies regularly consider hearsay evidence they think is reliable. We don't have a Ninth Circuit or Supreme Court rule, do we, that says the BIA or an IJ can never consider hearsay, nor do we. No, Your Honor. To the opposite, the Court has a rule that hearsay evidence is admissible in immigration courts in particular, as long as it doesn't violate the alien's due process. And in this case, there's no indication the MIPT reports do, aside from the fact that there was no coherent objection raised below. And the reason that's so important is because that's the opportunity for the trial judge to fix the problem. Was she counseled at that time? Yes, she had, Counselor, Your Honor. And it's the opportunity for the other party to correct the problem. Can the alien submit hearsay evidence as well as the government? Absolutely. Is it a two-way street? Aliens do all the time. Typically, the bulk of an alien's evidence is hearsay evidence. Things like declarations from people in their home countries, reports from the State Department, things like that. So in immigration court, it's typical. I want to ask you a little bit about the statute concerning what defines a terrorist organization. Let's assume, which, of course, I'm not saying this is true, but assume that Ethiopia was oppressive. Let's say they were like Adolf Hitler or something, and that the area, which is now defined as Eritrea, represented a group of people within an affinity that wanted independence. Does their fight for freedom or independence from Ethiopia, in that hypothetical, if they use violent means to get independence, does that make them a terrorist organization? Well, Your Honor, the short answer is that this court in the Kahn decision has already said that it does. This is because Congress can be broad or be narrow, be generous or ungenerous, when dealing with people seeking admission to the United States. And in this case, Congress has been very narrow or broad, depending on your perspective, in defining what a terrorist organization is. And there is no exception for freedom fighters. So assuming away the hijacking and the kidnapping of United States persons that the evidence shows the ALF was involved in, assuming that all the way and assuming a pure intent to liberate themselves, there's still no exception in the statute for that. Following up on Judge Gould's question, is the government saying that if somebody from the eastern part of Libya today rebelling against Gaddafi came into the United States, that that person had been involved in the rebel army, that they would be barred based on their terrorism and various activities? They would be barred, Your Honor, but that's why there is the waiver provision that Congress instituted in 2008. So the Secretary of Homeland Security, in consultation with the Secretary of State and the Department of Justice, would have the right to waive otherwise their toast? That's correct, Your Honor. And if the person were still in Libya or not in proceeding yet, the Secretary of State is the one who adjudicates the waiver. So if we reject all the other claims on the appeal and we say substantial evidence supports what the BIA decided, should we remand, as counsel asked us to do, so that the BIA can consider the law that lets the Secretary make a waiver, which counsel argued was enacted after Ms. Haley was before the BIA? Well, I don't think it would be appropriate for a number of reasons. First, the statute specifies that the court doesn't have jurisdiction over it. Also, it was enacted after the proceedings. And third of all, the board and the immigration judge don't have any jurisdiction over such an issue. The board specifically found that it doesn't. Another reason is because Ms. Haley isn't even eligible right now under any of the waivers that have been put out. Her case was decided in a time before the Secretary said she will consider cases. And the fact is the DHS has also not put out guidance for ELF cases yet. And ultimately- Is it still open to her to apply to the Secretary? Yes, Your Honor. Procedurally? The Secretary can consider a waiver at any time. So even if this court issues an opinion denying the petition for review, the Secretary can still consider a waiver at that time. So then if she applied to the Secretary, would that stay the BIA's or would that stay the DHS's removal proceedings? Or would it just be like a race of, you know, if the Secretary acted before the DHS acted, okay, maybe she'd stay. But if they were too slow, she'd be sent back. Well, Your Honor, Petitioner's Counsel is a good one here. And I think he would go to the District Director and ask him to stay pending the consideration of her waiver application. Now, the District Director would not be required to stay it. Theoretically, the Secretary could stay it as well. But that would be one way to prevent that from happening. That's unlikely to happen before the Secretary does issue guidance on ELF waiver cases. But once it does, then that would be a possibility. Okay. Thank you. There was an issue earlier I can't. Well, I have one statutory question in my mind that I thought I'd like to float to you to hear the government's position on. It seems to me here there's some language in the statute that something like a group is a terrorist organization. It uses like a present tense. And the arguments asserted in the briefing of the petitioner that we should say that that means the organization doesn't just have to have been terrorist when the petitioner was in it, but it has to be terrorist as of the date of the hearing that the BIA had. And what I'm trying to understand and can't understand is, you know, how that would work, what the government's position is if the literal language says it is. Let's say KSM got out of Guantanamo Bay and was about to be removed and applied for some type of waiver. And his response to his counsel was, well, yes, but it was found to be not eligible because of a terrorist-allocated organization. And his response is, yes, they were terrorists last month, but they've now become just a political party, you know. I mean, could the government make proof of the current status of every organization before this bar could apply? And how do you deal with the literal language? Well, Judge, Your Honor, this actually brings up the issue I was trying to remember before that Judge Smith mentioned. This is one of the things that wasn't raised below this particular issue. But the government's position on the language is that the language barring aliens is past tense. It bars an alien who has engaged in terrorist activity from obtaining asylum and withholding. So the language requiring that a terrorist organization engages in terrorist activities, that refers to the activities at the time of the alien's terrorist activities. So it needs to be a terrorist organization at the time the person commits the terrorist activities in support of it. Otherwise, you're looking at a rather bizarre situation where a person could raise funds and materially support a peaceful organization and for unrelated reason the person comes to the United States, applies for asylum. In the meantime, that organization is radicalized and become a terrorist organization. It now is a terrorist organization and that person did help them. Now that person is barred. So the only way to rationally read that is that the terrorist organization engages in terrorist activities at the time the alien had engaged in those terrorist activities. Okay, thank you. Now the other interesting point about that is, even assuming it's correct, Ms. Hiley needs to then show that the evidence compels the conclusion that the ALF is no longer a terrorist organization because it's her burden to show that the bar to her asylum doesn't apply. And here we have evidence. She testified she left the organization in 2002 because it advocated violent overthrow of the government. In 2001, the State Department report described the ALF as an armed opposition group. Oh, so it got its independence in, I think it was 91, right? Yeah, 91 and 93. They're two different events. So how could the ALF be a separatist terrorist group after they become separate? Their rival party controls Eritrea right now. Oh, I see. Right, some members have stayed in opposition and continued the armed struggle, at least as of her testimony in 2002 when she resigned. You mean they're struggling against the Seass-Soforkes party? That's correct, Your Honor. I see, okay. So that was one of the other issues that wasn't raised below. But I suppose we should briefly mention the cap protection issue because if she's ineligible for asylum withholding removal, then she remains eligible for cap protection. In this case, the Board identified a number of issues where a number of suppositions, each of which is not likely to occur, not more than likely to occur, because the standard for obtaining a cap is whether the person is more likely than not to be tortured on return to the country of origin. And her argument is that Mr. Ibrahim threatened her, asked her to marry him and threatened to reveal her as a member of the ELF if she didn't agree to. And that requires a number of assumptions that the Board listed. He's a problematic, don't you think? He sounds like a peach. But starting at the end of the assumptions, you know, the final assumptions that needs to be, that the Board said isn't more likely than not to occur is that she will be arrested and she will be tortured if she's arrested. One thing we pointed out in the brief is that the government permitted members of the ELF to come back if they renounce the ELF. She's done that explicitly on the record. That was in the Amnesty International report published in 2002, almost 10 years after independence. She now claims that only applies to immediately after the independence. But, again, the record needs to compel that finding. I say I really don't have time to go into this any further. I think your time is up, Mr. Stone, but we thank you very much for the government's argument. Thank you, Your Honor. My co-panelists have other questions. We'll thank you for your presentation. And, Mr. Matthews, if you'd like a minute to respond, we'll give that to you. Thank you. Regarding the exhaustion issue, I would point out that in her brief she does have two headings, saying immigration judge erred in finding that Haile was a member of a terrorist organization and also erred in finding that Haile engaged in terrorist activities. You have the ER side on that, or AR, rather. 54 and 56. Thank you. And he details those arguments. So I do believe he did exhaust those arguments. And then regarding the hearsay evidence, the counsel noted the alien often uses hearsay evidence. But that hearsay evidence is not used to prove the case independently, and it can't be used to prove a single issue that wins her whole case. Whereas the government here is using hearsay evidence to prove a single material element that basically shuts down the alien's entire case. Do we have any authority that we can look at, either from the Supreme Court or from any of the United States Courts of Appeals? A country that says hearsay can't be used to establish the element that would be operative on a bar like this? Well, there is the Sixth Circuit case, which I mentioned, the Muhanna, in my brief. And that does say it's regarding the frivolous filing. And the court there does note that the frivolous filing is a death sentence for the alien. So therefore, any evidence provided should comport with due process and be fundamentally fair. And then there are the other cases that deal with findings of fraud in the immigration case. And similarly, those are where the Department of State submitted fraud investigation reports with multiple levels of hearsay. And similarly, the courts in those cases have said we can't accept this type of hearsay because they don't have guarantees of reliability or trustworthiness. Very good. Thanks. I'm sorry, did you have another question, Judge Gould? No, I just said thank you. Very good. Thank you, Mr. Matthew. We thank both counsel for their arguments. The case of Haley v. Holder is submitted.
judges: Marbley, Gould, Smith M.